Maurice ANDERSON–EL, Plaintiff,

v.

Philip O'KEEFE, a Skokie Police Officer; Brent Fowler, a Skokie Police Officer; Thomas Dworak, A Wilmette Police Officer, Defendants.

No. 93 C 2608.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 22, 1995.

Maurice Anderson–EL, Danville Correctional Center, Danville, IL, pro se.

Henry Lazzaro, Carol J. Lazzaro, Lazzaro & Lazzaro, P.C., Waukegan, IL, for Maurice Anderson–EL.

Patrick Alex Lucansky, Richard T. Wimmer, James Vincent Ferolo, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, Barbara M. Meyer, Village of Skokie Law Department, Skokie, IL, Mark S. Stein, Village of Skokie, Skokie, IL, for Philip O'Keefe, Brent Fowler and William Miller.

Charles E. Hervas, James Gus Sotos, Michael William Condon, Michael D. Bersani, Margo Lyn Ely, Hervas, Sotos & Condon, P.C., Itasca, IL, for Thomas Dworak.

Charles E. Hervas, James Gus Sotos, Michael William Condon, Michael D. Bersani, Hervas, Sotos & Condon, P.C., Itasca, IL, for George Carpenter.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendant Thomas Dworak's motion for summary judgment is before the Court. For the reasons stated herein, the motion is granted.

### Background

Plaintiff has not filed a memorandum of law in response to the motion for summary judgment, nor has he filed a responsive statement to the defendant's statement of uncontested facts, as required by N.D. ILL. LOCAL RULE 12(N). Accordingly, the plaintiff is deemed to have admitted the following facts solely for purposes of this motion. *See Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir.1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992).

On the night of December 20, 1991, police officers arrested plaintiff, Maurice Anderson–EL ("Mr. Anderson–EL"), in Skokie, Illinois and transported him to the Skokie police station. At the station, Mr. Anderson–EL was escorted to the bathroom, where defendant police officer Philip O'Keefe ("Mr. O'Keefe") repeatedly slapped him, pushed him against a wall, and hit him in the groin. Mr. Anderson–EL was subsequently escorted to an interrogation room, where defendant police officer Brent Fowler ("Mr. Fowler") repeatedly hit and kicked him in the face, chest, and groin. As a result of these beatings, Mr. Anderson–EL claims that he suffered from a bruise on the left side of his head, a scratch on his chest, and soreness of his eye, throat, and testicles. Mr. Anderson–EL remained at the Skokie police station for approximately two hours.[1]

---

1. Mr. Anderson–EL testified that he had injected     heroin and cocaine intravenously prior to his

Defendant Thomas Dworak ("Mr. Dworak"), an officer with the Wilmette Police Department, subsequently arrived at the Skokie police station and transported Mr. Anderson–EL to the Wilmette police station. Upon arrival at the Wilmette police station, Mr. Anderson–EL told Mr. Dworak that he wanted to go to the hospital and that he wanted an attorney present for questioning. Mr. Dworak responded that Mr. Anderson–EL would be taken to the hospital at a later time. On the following day, Mr. Anderson–EL woke up at about noon in the Wilmette police station and again asked to be taken to the hospital.

At approximately 3:00 p.m. that afternoon, Wilmette firefighter paramedics James Winter ("Mr. Winter") and Michael McGreal ("Mr. McGreal") arrived at the Wilmette police station to transport Mr. Anderson–EL to Evanston Hospital. Mr. Anderson–EL informed Messrs. Winter and McGreal that he had been beaten by Skokie police officers and complained of a tender scrotum, neck, and head, as well as symptoms of heroin withdrawal. According to the paramedics, Mr. Anderson–EL had normal vital signs and no visible injuries.[2] They gave him the highest possible "trauma score," indicating that he had good mobility, that he exhibited no life-threatening conditions, and that he did not require immediate medical attention. The paramedics did not treat Mr. Anderson–EL during the transport, nor did they transport him to the hospital on an accelerated basis.

At approximately 3:30 p.m., Mr. Anderson–EL arrived at Evanston Hospital, where he was examined by a nurse, a resident, and a physician, Dr. Leonara Gatewood ("Dr. Gatewood"). Dr. Gatewood testified that Mr. Anderson–EL had normal vital signs, that he had no acute distress, and that none of his organs were swollen or otherwise injured. X-rays of his chest indicated that he had no fractures. A range of motion exercise revealed that he had full range of motion in his left shoulder. The nurse observed a small abrasion on Mr. Anderson–EL's chest. The final diagnosis was "musculoskeletal chest pain—abrasion." Mr. Anderson–EL was advised to take Advil or Tylenol every four hours as needed for pain. Dr. Gatewood testified that, in her opinion, Mr. Anderson–EL did not have a serious medical condition and that any delay in his transport to the hospital did not exacerbate his injuries. Mr. Anderson–EL testified that he has never been advised by any other medical professional that the delay exacerbated his injuries. On December 23, 1991, Mr. Anderson–EL was transported to Cook County Jail. He is currently incarcerated at Danville Correctional Center.

On April 30, 1993, Mr. Anderson–EL brought this civil rights action pursuant to 42 U.S.C. § 1983 against Messrs. O'Keefe, Fowler, and Dworak; William Miller ("Mr. Miller"), Chief of Police for the City of Skokie; and George Carpenter ("Mr. Carpenter"), Chief of Police for the City of Wilmette. On February 8, 1994, Judge Andersen, to whom this case was then assigned, dismissed the official and individual capacity claims against Mr. Miller and the official capacity claims against Mr. Dworak. On May 4, 1994, Judge Andersen granted plaintiff's motion to voluntarily dismiss Mr. Carpenter from the case. Mr. Dworak now moves for summary judgment on the remaining claims against him.

### Discussion

■ Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The movant bears

---

arrest that night and that he had been under the influence of these drugs throughout these events. He also testified that the drugs dulled the pain from the beatings to some extent and that the pain had been tolerable that night but worsened considerably the following day.

2. As a matter of practice, these paramedics conduct a full body examination of the patient and record their observations on a report. Additionally, they call the hospital to report the patient's complaints and symptoms, and the hospital instructs them to treat the patient if immediate care is necessary.

the initial burden of submitting affidavits and other evidentiary materials to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the movant sustains this burden, the opposing party may not avoid judgment by resting upon the allegations or denials of the pleadings. *Waldridge v. American Hoechst Corp., supra*, 24 F.3d at 920. Rather, the non-movant must come forward with specific evidence showing that there is a genuine issue for trial. *Id.*; FED.R.CIV.P. 56(e). If the non-movant fails to do so, "then the court *must* enter summary judgment against [him]." *Waldridge v. American Hoechst Corp., supra*, 24 F.3d at 920 (citations omitted) (emphasis in original).

■ Mr. Anderson–EL alleges that Mr. Dworak failed to provide him with timely medical treatment despite his repeated requests for immediate care. The Due Process Clause of the Fourteenth Amendment prohibits officials from punishing pretrial detainees prior to a formal adjudication of guilt. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979)). It is well settled that prohibited punishment includes "deliberate indifference to the serious medical needs of pretrial detainees." *Id.* at 1289–90 (citations omitted). *See also Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir.1991).

Accordingly, Mr. Anderson–EL must demonstrate that Mr. Dworak acted "deliberately indifferent" to his "serious medical needs" in order to prevail on his Section 1983 claim. *Id.* He must also demonstrate that the delay in receiving medical care caused him to suffer "substantial harm." *See Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.), *vacated on other grounds sub nom. Cannon v. Thomas*, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974); *de La Paz v. Danzl*, 646 F.Supp. 914, 922–23 (N.D.Ill.1986). Mr. Dworak argues that summary judgment is appropriate because (1) the alleged injuries did not amount to a "serious medical need" requiring immediate medical care, (2) he did not act with "deliberate indifference" to Mr. Anderson–EL's medical needs, and (3) Mr. Anderson–EL did not suffer "substantial harm" as a result of the delay. He argues in the alternative that he is entitled to qualified immunity.

### Serious Medical Needs

■ The "due process clause requires treatment only for *serious* wounds." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir.1991) (emphasis in original). The Seventh Circuit has explained that an injury or condition is "serious" only if it is "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." *Id.* The inquiry is an objective one: a pretrial detainee must be given medical treatment "if a reasonable officer would have considered the injury serious." *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir.1995) (per curiam) (citation omitted). *See also Davis v. Jones, supra*, 936 F.2d at 973 ("the question is not what was in the officers' heads but how things should have appeared to competent officers").

In his motion for summary judgment, Mr. Dworak has come forward with evidence showing that a reasonable officer would conclude that Mr. Anderson–EL's injuries were relatively minor and certainly not life-threatening. Mr. Anderson–EL testified in his deposition that he suffered from a bruise on the left side of his head, a scratch on his chest, and soreness of his eye, throat, and testicles as a result of the beatings. He stated that he did not feel the bruise on his head until he awoke the day after the beatings and that he could not see the bruise because it was under his hair. He also stated that his eye first became swollen a few days later after he slept on a cold cement floor at Cook County Jail. He further stated that he had been under the influence of heroin and cocaine during the beatings and that, consequently, the pain had been tolerable until he awoke on the following day.

The paramedics who transported Mr. Anderson–EL to the hospital did not record any, let alone life-threatening, injuries, and found that he had normal vital signs and good mobility. Likewise, the staff at Evanston Hospital found that he had normal vital signs, no acute distress, no fractures, and that none of his organs were swollen or

otherwise injured. The only objective medical finding of injury was a small abrasion on his chest, which Mr. Anderson–EL himself described in his deposition as "a little scratch" which was the size of "a fingernail cut." Dr. Gatewood testified that this abrasion did not constitute a serious medical condition and accordingly prescribed only Advil or Tylenol. Mr. Anderson–EL has not come forward with any evidence contesting these facts. The court therefore concludes that Mr. Anderson–EL did not exhibit a medical condition which a reasonable police officer would characterize as "serious." *Accord, Davis v. Jones, supra,* 936 F.2d at 972 (evidence that the plaintiff suffered a scraped elbow and a shallow one-inch cut in his temple was "too thin to allow a reasonable inference that [his] wounds appeared serious"); *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988) (evidence that plaintiff had a small cut over one eye, a quarter-inch sliver of glass embedded in his palm, and bruises on his shoulders and elbows was insufficient to establish a "serious medical need").

### Deliberate Indifference

■ To establish a constitutional violation, a pretrial detainee must also show that a defendant acted with "deliberate indifference" to his medical needs. *Brownell v. Figel, supra,* 950 F.2d at 1290 & n. 5. In *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994), the U.S. Supreme Court defined "deliberate indifference" in the context of a prison conditions case brought under the Eighth Amendment. The Court explained that a prison official cannot be held liable for denying a prison inmate humane conditions of confinement

> unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* The Seventh Circuit has recently indicated that this standard should be applied in the context of a Fourteenth Amendment Due Process claim alleging deliberate indifference

to a pretrial detainee's serious medical needs. *See Murphy v. Walker, supra,* 51 F.3d at 717.

Mr. Anderson–EL testified that he asked to be taken to the hospital upon his arrival at the Wilmette police station. He also testified, however, that the pain from the beatings had only become intolerable when he awoke the following day, approximately three hours prior to his transport to the hospital. This delay was not excessive in light of the nature of Mr. Anderson–EL's injuries. As explained *supra,* Mr. Dworak could have reasonably concluded that Mr. Anderson–EL's injuries did not require immediate medical attention. Mr. Anderson–EL has not presented any evidence to support a finding that Mr. Dworak knowingly disregarded an excessive risk to his health in temporarily delaying his transport to the hospital.

### Substantial Harm

■ A delay in providing access to medical care to a detainee does not by itself violate the Constitution. *Cf. Duane v. Lane,* 959 F.2d 673, 677 (7th Cir.1992); *Shockley v. Jones,* 823 F.2d 1068, 1072 (7th Cir.1987). To establish a constitutional violation, a pretrial detainee must demonstrate that he suffered "substantial harm" as a result of a delay in receiving medical care. *See Thomas v. Pate, supra,* 493 F.2d at 158; *de La Paz v. Danzl, supra,* 646 F.Supp. at 922–923. To that end, a plaintiff who complains that a "delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1188 (11th Cir. 1994).

■ In the present case, Dr. Gatewood testified that any delay in transport to the hospital did not exacerbate Mr. Anderson–EL's injuries. The paramedics testified that they did not treat Mr. Anderson–EL during the transport and did not transport him on an accelerated basis because he did not have any serious injuries which required immediate care. Mr. Anderson–EL testified that he has never been advised by a medical professional that the delay exacerbated his injuries.

The record in this case is devoid of any evidence suggesting that Mr. Anderson–EL's injuries were even slightly exacerbated by the delay. Mr. Dworak is therefore entitled to summary judgment. *Accord, Martin v. Gentile, supra,* 849 F.2d 863, 871 (4th Cir. 1988) (fourteen-hour delay in providing plaintiff with medical care for minor injuries which required no stitches or painkillers did not violate the Constitution even if the delay was deliberate).[3]

### Conclusion

For the reasons stated herein, Mr. Dworak's motion for summary judgment is granted. Accordingly, Mr. Dworak is dismissed from this lawsuit.

---

3. Because Mr. Anderson–EL has failed to demonstrate (1) that he suffered a "serious" medical injury, (2) that Mr. Dworak acted with "deliberate indifference" in delaying his access to medical care, and (3) that he suffered "substantial harm" from the delay, I need not consider the question of whether Mr. Dworak is entitled to qualified immunity.