**INDIANA GAS COMPANY, INC., et al., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

**Civil No. 1:95cv101.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

Paul Fire & Marine Insurance Company, St. Paul Surplus Lines.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for plaintiffs Indiana Gas Co., Richmond Gas Corp., Terre Haute Gas Corp.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty & Surety Company, Detroit, MI, for defendant Aetna Casualty & Surety Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for defendant Home Ins. Co.

James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for defendant Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Ins. Companies.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell Ltd., Chicago, IL, for defendant Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for defendants St.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on "The Home Insurance Company's Motion for Partial Summary Judgment with Respect to the Greencastle and Marion Sites" which was filed on July 10, 1996. The parties completed briefing the motion on August 9, 1996.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."

*Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact", *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs, Indiana Gas Company, Inc., Richmond Gas Corporation and Terre Haute Gas Corporation (collectively "Indiana Gas"), commenced this action by filing a complaint for declaratory judgment and breach of contract because of the refusal of the five remaining defendant insurance companies to pay claims for third-party property damage tendered to them by Indiana Gas under comprehensive general liability insurance policies. According to Indiana Gas, the underlying property damage arises out of the historical gas manufacturing operations that took place at certain properties now owned by Indiana Gas.

From the early 1800's until natural gas became widely available in the 1940's and

1950's, gas for heating, lighting and cooking was manufactured by superheating coal and, later, coal combined with oil. During the manufactured gas era, more than 1,500 cities and towns across the country had a town gas plant that manufactured and stored gas until it was distributed directly to the homes and businesses of the town through a pressurized underground gas ·pipeline distribution system. The gas manufacturing process created tar, as well as other residuals and wastes, as a by-product. Unfortunately, the residuals, wastes and by-products from the gas manufacturing process contained hazardous constituents, such as benzene, which have been discovered in the subsurface soil and groundwater at properties where these manufactured gas plants ("MGPs") were operated. Nine such former MGP sites: Shelbyville, Lafayette, Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute, Indiana, are at issue in the claims for property damage which underlie this lawsuit for insurance coverage.

Indiana Gas claims that it has incurred and will continue to incur millions of dollars in liabilities as the result of state and federal law requirements to respond to the property damage at and near certain former MGP sites. According to Indiana Gas, damage to groundwater beneath the former MGP sites from subsurface leaching and migration began at most locations prior to 1955 and continues to the present day.

In support of the motion presently before the court, the defendants [1] argue that none of the policies at issue can be called upon to provide coverage for any of alleged liabilities associated with the Greencastle and Marion sites. The defendants claim that, to date, there has been no damage to property at the Marion site other than to property owned by Indiana Gas and, according to Indiana Gas and its expert, no damage to third-party property occurred at the Greencastle site until 1980, a date after the expiration of the last applicable policy sued upon.

The defendants claim that the express terms of the insuring agreements in all of the Home policies under which Indiana Gas claims coverage provide that the policies only apply to damage during the policy period to property other than that owned by the insured. A typical Home policy contains the following provisions: .

*The Insuring Agreement:* Home agreed "to indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability (a) imposed upon the Insured by law ... for damages ... on account of ... (ii) Property Damage ... caused by or arising out of each occurrence...."

*Occurrence:* The term "occurrence" is defined as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly or unintentionally results in ... property damage ... during the policy period."

*Property Damage:* The term "property damage" is defined as "loss of or direct damage to or destruction of tangible property (other than property owned by the named insured)."

The defendants state that all of the Home policies at issue in the present motion contain virtually identical language in the insuring agreements and definitions of "property damage." The defendants further state that the Aetna policies at issue in this motion provide . that the company will pay sums which the insured becomes legally obligated to pay as damages because of "property damage to which this insurance applies." The Aetna policies expressly state that "this insurance does not apply: (i) to property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control...." Additionally, the term "occurrence" is defined in the Aetna policies as an accident "which results, during the policy period, in bodily injury or property damage." "Property damage" is defined as "injury to or destruction of tangible property."

The defendants argue that the policies at issue unambiguously require a showing of third-party damage during their effective pe-

1. Other defendants have joined Home's motion for partial summary judgment.

riods before their coverage obligations are triggered. Indiana Gas does not appear to dispute that the only property damage occurring during the policy periods was damage to property it owned. Nevertheless, Indiana Gas claims that the policies provide coverage for the *liability* incurred as a result of the damage to its property, because the liability arises from a third-party claim. Indiana Gas' position is supported by Seventh Circuit authority. In *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir.1994), Judge Posner wrote:

> St. Paul's alternative ground is that the policy excludes coverage for property damage to property owned by the insured, and to date the only contamination from the waste materials generated by the painting operation is to soil and groundwater within the boundaries of the Patzes' own land. But the Patzes are not attempting to obtain an insurance award for a reduction in the value of, or other damage to, their land. How could they? It is a policy of liability insurance, not casualty insurance, on which they have sued. They seek to recover the cost of complying with a government order to clean up a nuisance. The fact that the clean up occurred on their land is irrelevant. For all we know, the damage to the land was much less than the cost of cleaning it up.

> We do not understand St. Paul to be arguing that the only liability against which the policy insures is liability to pay damages obtained by a lawsuit (or threat of suit) against the insured. St. Paul does argue that its policy stops short of reimbursing an insured for voluntarily undertaking to reduce potential liability, and we agree. The owner of an automobile cannot charge the expense of a fancy new braking system to his liability insurer on the ground that the system will make it less likely that he will injure someone in an accident. But the Patzes incurred the clean-up costs for which they seek reimbursement under the policy involuntarily.

This holding was reiterated in *Joslyn Manufacturing Co. v. Liberty Mutual Insurance Co.*, 23 F.3d 1212, 1214 n. 1 (7th Cir.1994), in which the Seventh Circuit stated:

> Several of Liberty's arguments address the issue of so-called "owned property." Even if Liberty were not estopped from raising these points, recent caselaw demonstrates that the arguments are without merit. Joslyn is seeking to recover the costs of complying with an Illinois order to clean up contamination, so that the fact that the cleanup occurred on Joslyn's land is irrelevant. *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir.1994). As explained by the *Patz* court, the plaintiffs there, like Joslyn here, were not seeking to recover for damage to their property but rather to recover the cost of liability imposed on them by a state agency.

*See also, Anderson Development Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1134 (6th Cir.1995); *Savoy Medical Supply Co., Inc. v. F & H Mfg. Corp.*, 776 F.Supp. 703, 709 (E.D.N.Y.1991); *Unigard Mut. Ins. Co. v. McCarty's Inc.*, 756 F.Supp. 1366, 1369 (D.Idaho 1988).

Aetna has not filed a reply brief addressing these authorities and apparently acknowledges that, under Seventh Circuit law, its policies must provide coverage for third-party liability arising from damage to the insured's property. Home, however, claims that the only relevant question in this case is "when did property damage take place." According to Home, property damage must occur on third party property before coverage under its policies is triggered. As the definition of "property damage" in the Home policies is "loss of or direct damage to or destruction of tangible property (other than property owned by the named insured)", Home argues that its policies have not been "triggered" unless there has been at least some damage to non-owned property during its effective period. Clearly, however, under Seventh Circuit law, it is irrelevant whether the damage occurred to third-party property or to the insured's own property, as long as the insured has incurred third-party *liability*. As it is clear that if Indiana Gas has incurred any involuntary liability at all with respect to the Greencastle and Marion sites, such liability is third-party liability, the policies at issue must provide coverage for such liability. Ac-

cordingly, Home's motion for summary judgment on this point denied.

*Conclusion*

For all of the foregoing reasons, Home's motion for partial summary judgment (as joined by other defendants) with respect to the Greencastle and Marion sites is hereby DENIED.